## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

FILED

2025 JUL 10 PM 2: 03

US DISTRICT COURT
EASTERN DIST. TENN.

ERIK COOPER, individually,
and, doing business as ACUITY
CONSULTING SERVICES, and,
doing business as STORYMARK
ENTERTAINMENT,

      **Petitioner / Plaintiff,**

      v.

**UNITED STATES SMALL BUSINESS
ADMINISTRATION**, and, **KELLY
LOEFFLER**, in her official capacity as
Administrator of United States Small
Business Administration,

      **Respondents / Defendants.**

No. 3:25-cv-327
Crytzer/McCook

---

## PETITION FOR JUDICIAL REVIEW
## AND COMPLAINT FOR DECLATORY RELIEF

---

**COMES NOW** ERIK COOPER, individually, and, doing business as ACUITY CONSULTING SERVICES, and, doing business as STORYMARK ENTERTAINMENT (collectively, "Petitioner" / "Plaintiff"), *in propria persona*, and submits this Petition for Judicial Review and Complaint for Declaratory Relief (hereafter, "Petition") against the UNITED STATES SMALL BUSINESS ADMINISTRATION and its administrator, KELLY LOEFFLER, in her official capacity (collectively, "Respondents / Defendants"). Petitioner/Plaintiff respectfully states to this Court as follows:

## INTRODUCTION

1.      Petitioner brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.      Petitioner is owner and operator of ACUITY CONSULTING SERVICES ("Acuity"), organized as a sole proprietorship. Petitioner, doing business as Acuity, challenges the United States Small Business Administration's ("SBA") denial of forgiveness of $111,900.00 of loan proceeds Petitioner received under the SBA's Paycheck Protection Program ("PPP").

3.      Petitioner is owner and operator of STORYMARK ENTERTAINMENT ("Storymark"), organized as a sole proprietorship. Petitioner, doing business as Storymark, challenges the SBA's denial of forgiveness of $125,500.00 of loan proceeds the Petitioner received under the SBA's PPP.

4.      The COVID-19 pandemic caused economic upheaval unparalleled since the 1930s.[1] Responding to the unprecedented economic crisis and the financial stress resulting from the global catastrophe, on March 27, 2020, the United States adopted the Coronavirus Aid, Relief, and Economic Securities Act ("CARES Act"). [Pub. L. 116-136, 134 Stat. 281]. The CARES Act provided essential economic relief to millions of Americans, including small business owners.[2] The CARES Act eventually authorized about $2 trillion worth of economic assistance.

_____

[1]      *See, e.g.,* https://www.columbiamissourian.com/news/politifact_missouri/fact-check-covid-19 could-be-the-worst-economic-crisis-since-the-great-depression/article_fb2640d2-3be3-11eb ae53 5b24bac04ba5.html (last visited June 20, 2025).

2

5.     Among its provisions, Section 1102 of the CARES Act initially allocated

$349 billion[3] to the SBA to provide forgivable loans to eligible small businesses.[4]

So long as an eligible business used the loan primarily to cover "eligible payroll" costs,

interest on mortgage obligations, rent under lease agreements, and utilities up to a

certain percentage (25 percent, and then later, 40 percent) during the covered period,

the loan would be forgiven if the business kept its workers employed through June

2020.[5] This program, fully backed by the SBA and in consultation with the United

States Department of the Treasury ("Treasury"), was called the Paycheck Protection

Program ("PPP").[6]

6.     As the SBA has recognized, the intent of the CARES Act was to assist

eligible businesses impacted by the pandemic.   [*See e.g.*, Fed. Reg. 51589-90

(explaining the CARES Act was designed "to provide relief to America's small

businesses expeditiously," at a time when "many small businesses nationwide have

experienced and continue to experience economic hardship" and "a dramatic decrease

in economic activity" related to the COVID-19 pandemic)].

7.     Congress authorized the PPP to provide "eight weeks of cash flow

assistance to small businesses through federally-guaranteed loans to employers who

---

2     *See, e.g.,* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 § 1102,
134 Stat. 281, 286 (2020) (codified as amended at 15 U.S.C. § 636(a)(36)). *See also*, H.R. 748 –
CARES Act, *available at* https://www.congress.gov/bill/116th-congress/house-bill/748/all
actions (last visited June 20, 2025).

3     Congress authorized an additional $310 billion in funding for the PPP program in April 2020.

4     *See, e.g.,* https://www.forbes.com/sites/staceychildress/2020/03/30/349-billion-in-forgivable-
paycheck-protection-loans-for-nonprofits-heres-how-to-apply (last visited June 20, 2025).

5     *See Id.*

6     H.R. 748 – CARES Act, Summary, Division A, *available at* https://www.congress.gov/bill/
116th-congress/house-bill/748 (last visited June 20, 2025).

3

maintained their payroll.  Such assistance was to cover costs such as payroll, paid sick leave, supply chain disruptions, and employee benefits.  The PPP further provided that certain amounts owed on such loans were eligible to be forgiven."[7]

8.      The PPP rules provided that "eligible payroll costs," included, *inter alia*, "salary, wages, commissions, or tips (capped at $100,000 on an annualized basis for each employee)."[8]  However, the amount of the eligible loan was limited to "up to two months of [the business's] average monthly payroll costs from the *previous year* plus an additional 25% of that amount," subject to a "$10 million cap."[9]  PPP guidelines excluded compensation paid to non-employee independent contractors (often called "1099 workers" because their payments are reported on IRS Form 1099-MISC as opposed to the  IRS Form W-2 used for a business's employees) in calculating PPP Loan amounts and because payments to independent contractors were not "eligible payroll costs."[10]  But while small businesses utilizing 1099 workers were eligible for PPP Loan forgiveness, they could not claim those workers as part of their payroll to increase the size of their loans.

9.      In order to process and distribute PPP Loans to qualifying small businesses, the SBA partnered with numerous financial institutions nationwide,

---

7     *Id. See also, e.g.,* 15 U.S.C. § 636m
8     *See, e.g.,* https://home.treasury.gov/system/files/136/PPP%20Borrower%20Information%
      20Fact%20Sheet.pdf (last visited June 20, 2025).
9     *Id.*
10    PPP expressly established a separate PPP program for independent contractors, freelance
      workers, and other so-called "Schedule C workers."  *Id.* (stating that "independent contractors
      and self-employed individuals can apply for and receive loans to cover their payroll and other
      certain expenses through U.S. Small Business Administration lenders." (last visited June 20,
      2025).  Those individuals were supposed to submit their own requests for PPP aid rather than
      obtain such aid secondhand from a contractual partner.

including SmartBank, a Tennessee corporation. Lenders, like SmartBank, were required to execute a CARES Act Section 1102 Lender Agreement with the SBA to facilitate PPP Loans for a lender's customers, small business owners. A true and exact copy of the CARES Act Section 1102 Lender Agreement is attached herewith and labeled **Exhibit A**. PPP Loans were guaranteed by the United States government subject to the lender's compliance with, among other requirements, "any rules or guidance that has been issued by SBA implementing the Paycheck Protection Program, or any other applicable Loan Program Requirements...as amended from time to time (collectively 'PPP Loan Program Requirements')." [Ex. A, ¶ 2]. "Lender assumes all obligations, responsibilities, and requirements associated with delegated processing of covered loans made under the Paycheck Protection Program." [Ex. A, ¶ 3]. "Any change in the terms or conditions stated in the loan authorization shall be made in accordance with PPP Loan Program Requirements." For purposes of making covered loans to an eligible recipient under the Paycheck Protection Program, Lender is responsible, to the extent set forth in the PPP Loan Program Requirements, for all decisions concerning the eligibility (including size) of a borrower for a covered loan. Lender may issue a covered loan approved under PPP procedures without prior SBA review and approval of the processing and underwriting of the loan by executing a PPP Authorization." [*Id.*]. "...Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements." [Ex. A, ¶ 10B]. "By signing below, I hereby certify...that all

representations made are true and correct to the best of my knowledge. … I further acknowledge that any false statements made to the U.S. Small Business Administration and Department of the Treasury can result in criminal prosecution …and imposition of civil money penalties…" [Ex. A, pg. 4].

10. Financial institutions participating in the PPP, like SmartBank, profited because the SBA paid processing fees in amounts based on the size of the loans they issued, and SmartBank's employees earned commissions from PPP Loans they funded with SmartBank. SmartBank and its employees were incentivized to issue PPP Loans, even PPP Loans for unqualified applicants. Origination fees (commission) were awarded based upon a sliding scale, starting at 1% of loan amounts more than $2 million, then increasing in percentage as the loan amounts decreased until the originating institution received 5% in fees for every loan issued up to $350,000.[11] Because banks, like SmartBank, received fees on this basis, the incentives for making PPP Loans were far different than is normally the case for loans: federally-guaranteed loans required a bank's less-stringent analysis and qualification for funding since the bank's own money was not at risk. Participating banks did not have to concern themselves, as per usual, with whether a loan could be paid back because the loans were meant to be forgiven. Without concern for repayment, participating lenders were incentivized to increase the amounts of each issued PPP Loan because more loans and more loan value meant more bank profit.

---

11    https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet .pdf (last visited June 20, 2025).

6

And despite its miniscule, small-town community bank size, SmartBank competed with formidable mega-corporate conglomerate banks with national reach to vet maximum profits by soliciting and writing (not, *under*writing with their own money) federally-backed, "guaranteed" "PPP Loans."

11.     On the same date, and at the same time, Petitioner transmitted to SmartBank, acting as an agent of the SBA, two PPP Loan applications – one for Acuity, and one for Storymark.

12.     Each of Petitioner's two PPP Loan applications was prepared with the assistance of SmartBank while acting as an agent of the SBA.  In fact, SmartBank/SBA initially rejected each of Petitioners' two PPP Loan applications and requested Petitioner recalculate his qualifying PPP Loan amount utilizing the guidance, assistance, and methodology employed by SmartBank and its employees, including vice president and lending officer, Gus Floodquist ("Mr. Floodquist"), among others.

13.     Petitioner complied with each of SmartBank's instructions and resubmitted each of his two PPP Loan applications for each of his two sole proprietor businesses, Acuity and Storymark.  Petitioner relied upon SmartBank's guidance, assistance, methodology, and instructions in preparing and resubmitting each of his two PPP Loan applications.

14.     SmartBank, acting as the SBA's authorized agent, received, reviewed, processed, and approved each of Petitioner's two PPP Loan applications.

15.     SmartBank approved Petitioner's PPP Loan application for Acuity in the amount of $111,900.00.  The PPP Loan was assigned loan number 5182907105.

7

A true and exact copy of Petitioner's PPP Loan Promissory Note for Acuity created by SmartBank for the SBA is attached herewith and labeled **Exhibit B**.

16.     SmartBank approved Petitioner's PPP Loan application for Storymark in the amount of $125,500.00. The PPP Loan was assigned loan number 5357177103. A true and exact copy of Petitioner's PPP Loan Promissory Note for Storymark created by SmartBank for the SBA is attached herewith and labeled **Exhibit C**.

17.     In confirmation of Acuity's eligibility for a PPP Loan, SmartBank approved and funded the PPP Loan.

18.     In confirmation of Storymark's eligibility for a PPP Loan, SmartBank approved and funded the PPP Loan.

19.     SmartBank/SBA failed to service each of Petitioner's two PPP Loans. As examples of SBA's/SmartBank's failures, SmartBank failed to timely remit documents requested by the SBA to determine Petitioner's eligibility for PPP Loan forgiveness and lied to Petitioner about having responded timely to the SBA's requests, SmartBank ignored communications transmitted by the Petitioner to SmartBank concerning his substantially overdue PPP Loan forgiveness decisions for Acuity and for Storymark, SmartBank failed to timely remit to Petitioner the SBA's Final Loan Review Decision ("FLRD") Letters (thereby limiting or outright denying Petitioner opportunity to dispute the SBA's decision through the proper administrative process), SmartBank issued PPP Loan repayment notices and demanded repayment during the pendency of the SBA's review and decision of Petitioner's PPP Loan forgiveness applications, and SmartBank filed civil litigation

against the Petitioner in violation of the PPP dispute resolution process required under the program.[12]

20.    In March and April 2021, Petitioner prepared and transmitted to SmartBank a PPP Loan forgiveness application for each of his two PPP Loans ("Application" or "Applications").    Each Application bore the Petitioner's social security number, the same social security number relied upon by the SBA/SmartBank to determine Petitioner's eligibility for each of two PPP Loans, and the same social security number the SBA/SmartBank relied upon to issue to issue each PPP Loan.

21.    Petitioner repeatedly contacted SmartBank to determine the status of SmartBank's transmittal of his Applications to the SBA for PPP Loan forgiveness. Petitioner received no confirmation of SmartBank's transmittal.

22.    By June 2021, SmartBank had not transmitted either of Petitioner's two Applications to the SBA.  Instead, SmartBank contacted the Petitioner and asked the Petitioner to change his "Business Taxpayer Identification Number (EIN, SSN)" on Petitioner's Storymark Application from Petitioner's own social security number to Petitioner's Employer Identification Number ("EIN"), causing Petitioner's Acuity Application to remain in Petitioner's social security number.  In doing so, SmartBank intended to "trick" the SBA into approving each Application when each Application contained an alternate taxpayer identification number.  Petitioner refused.

---

12    During the pendency of the SBA's examination and decision pertaining to Storymark's PPP Loan forgiveness application, on July 14, 2023, in the matter styled *SmartBank v. Erik Cooper, dba Storymark Entertainment*, filed in the Chancery Court for Sevier County, Tennessee and assigned case number 23-7-185.  The matter remains pending upon the filing of this action.

23.    When Petitioner applied for PPP Loan forgiveness, using Petitioner's

same taxpayer identification number (social security number) indicated in each of his

PPP Loan applications, the SBA determined Acuity was denied loan forgiveness on

three occasions:

     a.    The first occasion occurred on December 14, 2021.  The SBA

          issued a FLRD Letter denying PPP Loan forgiveness on the

          following basis:  "Negative income from 2019 1040/Schedule C.

          The borrower was unresponsive to request for documentation

          regarding the above issue, therefore a recommendation of

          denial."  SmartBank misrepresented to the Petitioner that

          SmartBank had, in fact, transmitted the SBA's requested

          documentation furnished to SmartBank (the SBA's agent)

          by the Petitioner.  Petitioner appealed the SBA's decision,

          and on March 19, 2022, the SBA's Office of Hearings and

          Appeals administrative judge, Gary D. Smith, granted the

          SBA's motion to dismiss the appeal, recalling the SBA's

          FLRD Letter and returning Storymark's PPP Loan

          forgiveness application to the SBA for further review.

     b.    The second occasion occurred on December 21, 2022.  The SBA

          again issued a FLRD Letter denying PPP Loan forgiveness

          on the following basis:  "SBA has determined that the borrower

          was ineligible for the PPP loan.  The reason(s) for SBA's decision

10

is as follows: After a review of the documentation provided it has been determined that the borrower received more than one PPP loan. A borrower may receive only one First Draw PPP Loan and one Second Draw PPP Loan. Research confirms borrower received duplicate first draw PPP loans. A borrower may receive only one First Draw PPP Loan and one Second Draw PPP Loan. Moreover, the SBA requested the following information to calculate the origination amount, determine the borrower's eligibility, and/or support forgiveness. Documents requested consisted of 2018, 2019 and 2020 IRS tax return transcripts, signed 4506-C and lender's calculation of loan amount at origination." Again, SmartBank misrepresented to the Petitioner that SmartBank had, in fact, transmitted the SBA's requested documentation furnished to SmartBank (the SBA's agent) by the Petitioner. Again, Petitioner appealed the SBA's decision, and on March 9, 2023, again, the SBA's Office of Hearings and Appeals administrative judge, Gary D. Smith, granted the SBA's motion to dismiss the appeal, recalling the SBA's FLRD Letter a second time and returning Storymark's PPP Loan forgiveness application to the SBA for further review.

c.     The third occasion occurred on January 21, 2025. The SBA again issued a FLRD Letter denying PPP Loan forgiveness

11

on the following basis: "SBA has determined that the borrower was ineligible for the PPP loan amount. The reason(s) for SBA's decision is as follows: Borrower applied for the PPP loan 4/7/2020 referencing an average monthly payroll of $50,700. In review of documentation provided there is no record of wages paid in 2019. Borrower stated that 'the borrower's anticipated 2020 payroll register was used to arrive at the average monthly payroll'. However, on the borrower application form 2483 available at the time of the application, the following information was provided in the Instructions for completing this form: For purposes of calculating 'Average Monthly Payroll,' most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee. Borrower applied for the loan under these requirements but stated that an amount not provided for in the instructions was used. After a

12

review of the documentation provided, the SBA concludes that there are material discrepancies which cause the borrower to be ineligible for the PPP loan." SmartBank misrepresented to the Petitioner his eligibility for a PPP Loan for Acuity. Additionally, SmartBank miscalculated the PPP Loan amount for Acuity, and required Petitioner to submit his revised PPP Loan application based upon SmartBank's PPP Loan amount calculation or be denied submission of Petitioner's PPP Loan application. Petitioner again filed an appeal with the SBA's OHA, however, Petitioner's PPP Loan appeal was received by the OHA one day late due to interrupted Internet service caused by seasonal weather. Petitioner filed a petition for reconsideration with an accompanying declaration and evidence of the interruption, however, on March 4, 2025, OHA administrative judge Gerald J. Hill denied the petition finding that the OHA maintained no discretion or authority to apply equitable tolling under 13 C.F.R. § 134.1205(a)(2).

24. During the pendency of Petitioner's nearly five-year journey seeking forgiveness of Acuity's PPP Loan, SmartBank and the SBA provided the Petitioner vacillating answers concerning the status of the SBA's review of Petitioner's PPP Loan forgiveness application for Storymark:

/////

13

a. Petitioner transmitted multiple written requests to the SBA and to SmartBank for updates concerning the status of Petitioner's PPP Loan forgiveness application for Storymark, and received no response.

b. Petitioner's January 15, 2025 email correspondence to SBA counsel David Higgs received Mr. Higg's response on January 23, 2025: "The SBA sent your Lender, SmartBank, a Final PPP Loan Review Decision on [Storymark's PPP Loan] on January 21, 2025. SmartBank should be forwarding this to you; in the meanwhile, I have attached a copy for your convenience. **SmartBank shows [Storymark's PPP Loan] as cancelled** [emphasis added]. You'll need to contact them for further information." SmartBank had not timely transmitted the SBA's FLRD Letter for Storymark as Mr. Higgs suggested.

c. On March 3, 2025, Petitioner communicated with SBA counsel Denise L. Grugan to inquire when a decision was made to "cancel" Petitioner's PPP Loan for Storymark. Petitioner received an erroneous email communication from the SBA's counsel intended for "Erika" writing, "Hi Erika, Any suggestions how I should respond to this borrower? It was assigned to me this morning. In the OHA case portal its status is 'complete.' According to CAFS the loan's status is 'canceled.' CAFS also list a slew of holds on

the loan. Borrower is asking for the appeal, but it is in the docket section of the OHA case portal. Borrower's time for filing an appeal has passed. Should I resend the FLRD?".

d. No FLRD Letter has ever been issued for Petitioner's PPP Loan for Storymark.

e. While communicating with the SBA, Petitioner also transmitted a written request to SmartBank requesting "the date that SmartBank allegedly 'cancelled' [Storymark's PPP Loan]…" On March 5, 2025, SmartBank's legal counsel replied, in part, "The Bank advises me that it has never 'canceled' the subject loan. As you know or should know, the SBA determined that the loan did not qualify for the Paycheck Protection Program. As such, you are liable to the Bank for the loan balance."

f. Despite the only SBA FLRD Letter having been issued on January 21, 2025, SmartBank had already prematurely filed civil litigation against Petitioner (doing business as Storymark) since July 14, 2023.[12]

25. Petitioner has exhausted all administrative remedies required under the PPP and now commences this action under the APA to set aside the SBA's unlawful denial of forgiveness of Petitioner's $111,900.00 PPP Loan for Acuity. Additionally, Petitioner was obstructed from pursuing any administrative remedies required under the PPP for forgiveness of Petitioner's PPP Loan for Storymark

15

because the SBA never issued a FLRD Letter, as required, prompting either full or partial PPP Loan forgiveness, or denial of same, and affording Petitioner opportunity to exercise his rights under the PPP to pursue administrative remedies for relief available to him by appealing the SBA's decision to the OHA.

26.     Additionally, Petitioner seeks judicial review of the OHA's erroneous conclusions that the SBA had no discretion to apply equitable tolling under 13 C.F.R. § 134.1205(a)(2). Petitioner requests the Court award judicial relief to direct the OHA to accept and administer Petitioner's appeal of the SBA's FLRD for Petitioner's PPP Loan for Acuity.

27.     Finally, Petitioner requests a Declaratory Judgment that the actions of the Respondents/Defendants to assign authority of the SBA to SmartBank to determine an applicant's loan eligibility under its Lender Agreement bestowed proper authority from the SBA to SmartBank to review, process, and approve PPP Loans for the Petitioner including, without limitation, SmartBank's determination of the Petitioner's eligibility for each of his two PPP Loans, SmartBank's determination of the loan amount for each of Petitioner's two eligible PPP Loans, and, SmartBank's determination of the Petitioner's eligibility for PPP Loan forgiveness for each of his two PPP Loans for Acuity and Storymark.

## PARTIES

28.     Petitioner/Plaintiff ERIK COOPER (hereafter "Petitioner", "Plaintiff", or "Cooper") is a citizen of the United States of America and a resident of Sevier County, Tennessee. Petitioner is the owner of Acuity Consulting Services (Acuity)

and Storymark Entertainment (Storymark). Acuity and Storymark are each organized as a sole proprietorship business.

29. Respondent/Defendant UNITED STATES SMALL BUSINESS ADMINISTRATION (SBA) is an independent federal agency of the United States government created and authorized under 15 U.S.C. § 633 *et seq.* The SBA maintains principal offices at 409 Third Street, S.W., Washington, D.C. Under the CARES Act, the SBA administers the PPP.

30. Respondent/Defendant KELLY LOEFFLER ("Administrator") is the Administrator of the SBA and is sued in her official capacity only as Administrator of the SBA. Authority to sue the Administrator is granted by 15 U.S.C. § 634(b). The Administrator maintains principal offices at the SBA located at 409 Third Street, S.W., Washington, D.C. Under the CARES Act, the Administrator is the administrator of the PPP.

## JURISDICTION AND VENUE

31. This Honorable Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because Petitioner's causes of action arise under the APA. [*See*, 5 U.S.C. § 701 ("A person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *see also*, 15 U.S.C. § 634(b)(1); 28 U.S.C. § 1331 and 2201].

32. Petitioner is entitled to judicial review of the OHA's final decision pertaining to the Petitioner's PPP Loan for Acuity. [*See*, 13 C.F.R. § 134.1201(d)

("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be brought in a federal district court."); *see also*, 13 C.F.R. § 134.1201(g) ("Final decisions may be appealed to the appropriate federal district court only.")].

33.     Authority for judicial review of agency action is further afforded under 5 U.S.C. § 702, 703, and 704.

34.     This Honorable Court is vested with original jurisdiction over declaratory judgment claims under 28 U.S.C. § 1331 and 1343.

35.     Petitioner is entitled to declaratory judgment relief of the OHA's abandonment of Petitioner's PPP Loan for Storymark since no FLRD was ever issued and conflicting information from both the SBA and SmartBank indicates Petitioner's PPP Loan for Storymark was either "cancelled" or "not cancelled". This Honorable Court is vested with the authority to grant the requested declaratory judgment under 28 U.S.C. § 2201 *et seq.* [*See also*, 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202].

36.     The January 21, 2025 final loan review decision (FLRD) for Petitioner's PPP Loan issued for Acuity and the OHA's March 4, 2025 denial of Petitioner's petition for reconsideration of the OHA's dismissal of Petitioner's appeal is the final decision of the SBA, and thus, is a final agency action for the purposes of the APA pursuant to 13 C.F.R. § 134.1211(b) which provides that "unless a reconsideration is filed pursuant to paragraph (c) of this section or the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the initial decision pursuant to paragraph (d) of this section, an initial decision shall become the final

decision of the SBA 30 calendar days after its service." [*See also*, 13 C.F.R. § 134.1211(c)(3)]. Petitioner requested the Administrator exercise her discretion on March 4, 2025, March 19, 2025, and May 6, 2025, however, Petitioner received no response from the Administrator.

37. This Honorable Court has jurisdiction to award reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 2000bb-1(c).

38. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(A) and 5 U.S.C. § 703 because Petitioner resides in this district; and pursuant to 13 C.F.R. § 134.1211(g), which provides that "[f]inal decisions [of the SBA] may be appealed to the appropriate federal district court only."

## FACTUAL ALLEGATIONS

### A.    Plaintiff Applied for Two PPP Loans Through the SBA's Agent, SmartBank, to Save Acuity and Storymark

39. On March 27, 2020, Congress passed the CARES Act to provide critical monetary relief to individuals and businesses struggling economically to stay afloat at the start of COVID-19 global pandemic.

40. Congress entrusted the administration of the PPP to the SBA, explicitly incorporating the SBA's existing framework for "small business concerns" who are eligible for PPP loans. [*See*, 15 U.S.C. § 636(a)(36)(D)(i) ("During the covered period, in addition to small business concerns, any business concern…described in section 657a(b)(2)(c) of this title shall be eligible to receive a covered loan if the business concern…employs not more than the greater of 500 employees…")].

19

41.     As part of this important legislation, the SBA initially made available $349 billion in funding for small businesses to "provide eight weeks of payroll and certain overhead to keep workers employed.[13]  Once this funding was approved, eligible small business owners were able to "go to a participating SBA 7(a) lender, bank, or credit union to apply for a loan, and be approved on the same day."[14] The legislation authorized the SBA to "forgive the portion of the loan proceeds that are used to cover the first eight weeks of payroll costs, rent, utilities, and mortgage interest.[15] [*See also*, 15 U.S.C. § 636(a)(36)(F)].

42.     The SBA outlined certain criteria for PPP Loan eligibility, including requiring PPP Loan applicants have "500 or fewer employees whose principal place of residence is in the United States; or [be] a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and are a small business as defined in Section 3 of the Small Business Act (15 U.S.C. 632), and subject to the SBA's affiliation rules under 13 C.F.R. 121.301(f) unless specifically waived in the Act; or a tax-exempt nonprofit organization described in Section 501(c)(3) of the Internal Revenue Code ("IRC"), a tax-exempt veterans organization described in Section 501(c)(19) of the IRC, Tribal business concern described in Section 31(b)(2)(C) of the Small Business Act, or any other business."[16]  In addition, applicants needed to document that they had been in

---

13      https://www.sba.gov/article/2020/apr/02/349-billion-emergency-small-business-capital-cleared-sba-treasury-begin-unprecedented-public-private-0 (last visited June 20, 2025).
14      *Id.*
15      *Id.*
16      https://home.treasury.gov/system/files/136/Interim-Final-Rule-Paycheck-Protection-Program-as-Amended-by-American-Rescue-Plan-Act.pdf (last visited June 20, 2025).

"operation on February 15, 2020 and either had employees for whom they paid salaries and payroll taxes or paid independent contractors, as reported on Form 1099-MISC."[17] Once applicants met the criteria, they could receive PPP Loans in an amount up to 2.5 times their qualifying monthly payroll costs, with a two-year maturity period."[18]

43.     In determining whether a company is a "small business concern," the SBA employed various tests, including an alternative size standard based on the applicant's maximum tangible net worth and average net income after federal taxes.

44.     Congress authorized the SBA to establish an alternative size standard via the Small Business Jobs Act of 2010. [*See*, P.L. 111-240].

45.     The CARES Act also provided an interim standard to apply until the SBA decided what the alternative size standard should be. [*Id.*] This was one of many interim standards the SBA employed until passage of its final rules governing the standard.

46.     Under this standard, the PPP Loan applicant must have (a) no more than $15 million in tangible net worth at the time of the application, and (b) no more than $5 million in average net income, after federal taxes, for the two fiscal years prior to the date of the application. [*Id.*; *see also*, 15 U.S.C. § 632(a)(5)].

47.     As of April 6, 2020, the SBA advised that small businesses meeting this alternative size standard were eligible for PPP Loans. [*See*, AR0604-605 (Paycheck Protection Program Loans Frequently Asked Questions (FAQs), at Question 2)].

---

17      *Id.*

48.     PPP Loans issued under the CARES Act would be eligible for forgiveness to the extent the PPP Loan was used for these specific business expenses. [*See*, 15 U.S.C. § 636m(b)].

49.     The PPP qualifying criteria involved two steps. The first step required applicants to qualify as "small businesses" by showing that the applicant had either traditional employees or used independent contractors. The second step, however, required businesses to calculate their qualifying costs – which excluded payments made to independent contractors – because "independent contractors have the ability to apply for a PPP Loan on their own, so they don't count for purposes of a borrower's PPP Loan calculation [emphasis added]."[19]

50.     Days after passage of the CARES Act, the SBA's agent, SmartBank, began advertising the PPP Loan program to small businesses who employed independent contractors. In doing so, SmartBank, as the SBA's agent, conflated the two-step PPP Loan eligibility process, representing to potential applicants that they could not only qualify for the program because they employed independent contractors, but **they could also obtain forgivable loans to pay those independent contractors**. For those small businesses without 1099 workers, SmartBank likewise promised those small business owners forgivable PPP Loans in an amount determined by SmartBank's internal formulas, conceivably endorsed by the SBA – not the SBA's formula – all in an effort to increase the fees SmartBank

––––––––––
18     *Id.*
19     *Id.*

would earn from originating those unforgivable PPP Loans.

51.     At the time that Petitioner signed, certified, and submitted each of his PPP Loan applications, there was widespread confusion about what method to determine the number of employees should be used.

52.     On April 6, 2020, the SBA and Treasury promulgated FAQ #17[20] making clear that **PPP Loan applicants could rely upon the guidance that was available at the time of PPP Loan application regarding PPP Loan eligibility and PPP Loan forgiveness, and that such eligibility and forgiveness would be evaluated based upon that available guidance even if guidance issued at a later point provided otherwise.** FAQ #17 provided:

> "17.   Question: I filed or approved a loan application based on the version of the PPP Interim Final Rule published on April 2, 2020. Do I need to take any action based on the updated guidance in these FAQs?
>
> Answer: No. Borrowers and lenders may rely on the laws, rules, and guidance available at the time of the relevant application. However, borrowers whose previously submitted loan applications have not yet been processed may revise their applications based on clarifications reflected in these FAQs."

53.     Only after Petitioner's two PPP Loan applications had already been approved and each of his two PPP Loans fully funded and expended as the SBA and SmartBank explicitly directed did the SBA and Treasury provide guidance to PPP Loan applicants and its lender partners (SmartBank) about limiting sole proprietor applicants to one eligible PPP Loan, and, the SBA's preferred method to determine

---

20      https://www.sba.gov/sites/default/files/2023-03/Final%20PPP%20FAQs.pdf (Last visited June 20, 2025).

an applicant's number of employees. Consequently, the SBA's and Treasury's untimely guidance had no bearing upon PPP Loans already issued and whose PPP Loan funds had already been fully distributed.

**B.** **Respondents Misrepresented In Their Marketing, Advertising, Disclosures and Loan Application Documents the Terms of PPP Loans to Include PPP Loans for a Borrower's <u>Multiple</u> Sole Proprietorships and Inclusion of a Borrower's Expenses Made to 1099 Workers**

54. Petitioner became aware of the PPP and was solicited by SmartBank to process his PPP Loan applications for Acuity and for Storymark. SmartBank transmitted email correspondence and SmartBank's "PPP SBA loan package" documents to the Petitioner via email on April 6, 2020.[21]

55. On April 8, 2020, Plaintiff transmitted email correspondence to SmartBank, writing "…I have two sole proprietorship accounts with SmartBank under my personal social security number – Acuity Consulting Services and Storymark Entertainment. I scaled my Acuity business in 2020, hiring 5 independent contractors in two states, with me as the sole owner and employee.

--------

21  SmartBank's "PPP SBA Loan Package" included three documents attached to their email correspondence: (1) SmartBank's "SBA Paycheck Protection Program Expected Information Needed" detailing 17 listed items Defendants required to process PPP Loan applications, including item "5.i.", "1099s for 2019 for independent contractors that would otherwise be an employee of your business. Do NOT include 1099s for services."; (2) the United States Chamber of Commerce's "Coronavirus Emergency Loans Small Business Guide and Checklist", indicating "You are eligible if you are…[a]n individual who operates as an independent contractor", "In evaluating eligibility, lenders are directed to consider whether the borrower was in operation before February 15, 2020 and had employees for whom they paid salaries and payroll taxes **or paid independent contractors** (emphasis added), and (3) "If you are an independent contractor, sole proprietor, or self-employed individual, lenders will also be looking for certain documents (final requirements will be announced by the government) such as payroll tax filings, Form 1099-MISC, and income and expenses from the sole proprietorship."; and (3) SmartBank's/SBA's Paycheck Protection Program Borrower Application Form."

24

What records will SmartBank require of me for Acuity Consulting Services to qualify for the SBA's Payroll Protection Program (PPP)?" SmartBank replied the same day, writing, in relevant part, "We have a guarantee for this program; however, we are required to reconcile the amounts because the guaranty is for the forgivable amounts – any unforgiven balances would become a term loan with the borrower on a 2 year pay back. We are not trying to be difficult, but rather **protecting the borrower** (emphasis added) to avoid any problems after the 8 week period. The SBA will only forgive the eligible payroll, rent, utilities, interest on mortgage obligation incurred in the ordinary course of business." Plaintiff replied the same day, "…as a business with no payroll in 2019 (I didn't even take payroll for myself), no 1099-MISCs, no tax records (and having filed no taxes for 2019 yet since, as a sole proprietor, none are due until June 15th [, 2020] under the current extension, and no one has asked for my previous tax years), **much of what is included in SmartBank's checklist is not available to me for either of two businesses** (emphasis added)."

56.     On April 10, 2020, while available PPP Loan funds were rapidly dwindling, while Petitioner's businesses were impacted by the worsening COVID-19 pandemic, and without any response from SmartBank to Plaintiff's April 8, 2020 emailed concerns, Petitioner transmitted his two PPP Loan applications to SmartBank. In an email communication to SmartBank, Petitioner disclosed, "…please be advised that under separate cover, I will submit an independent PPP application for my other company, Storymark Entertainment." The same day,

SmartBank's employee called Plaintiff and followed his call with an email communication requesting the Plaintiff "go back in and recalculate your average monthly income **for both businesses** (emphasis added), not including monthly compensation for any individual of more than $8,333.33 (that comes to $100M [sic] annually), as compensation exceeding that amount is expressly excluded in the interim final rule published by the SBA."

57.    The following day, a Saturday, Petitioner responded to SmartBank's request for Petitioner to recalculate his submission, writing "I can recalculate my submission, but understood from [SmartBank employee] Joel Beavers that he was doing that with my express permission given by phone when you both called for our teleconference earlier today...Can you confirm that **Mr. Beavers recalculated each of my two applications for Acuity and Storymark** [emphasis added] and the requested amounts excluding the payroll exceeding $100,000 per employee cap, or, do I need to do that? Please confirm the **two SBA PPP applications** have been submitted for processing." Thereafter, SmartBank's Joel Beavers emailed, "After we ended our phone call yesterday, it occurred to Gus [Floodquist] and I that the more appropriate thing to do to [would] be to let you recalculate your monthly payroll costs and submit a revised application based on that analysis." Petitioner replied that evening, in part, "I must share with you my extraordinary disappointment in my experienced with SmartBank's handling and administration of my SBA Payroll Protection Program (PPP) application **for my two businesses** [emphasis added], Acuity Consulting Services and Storymark Entertainment,

respectively, under the CARES Act. … I shared with you and Gus that my 2020 anticipated payroll included the actual payroll of each individual, as opposed to the reduction of such payroll based upon the cap as explained further." As SmartBank instructed, Petitioner resubmitted a revised PPP Loan application for his Acuity and Storymark businesses via email to SmartBank on Saturday, April 11, 2020.

58.　　On April 15, 2020, SmartBank transmitted email notice to the Petitioner stating, "**Your SBA loans are both approved** [emphasis added]. I will be in touch as soon as everything is ready to close."

59.　　On April 17, 2020, SmartBank was preparing to close both loans with Petitioner. SmartBank transmitted another email message to Petitioner reading, "Erik - Acuity $111,900[.] Storymark $125,500[.] We should be ready to close on Monday or Tuesday."

60.　　SmartBank's request for Form 1099-MISCs for 2019 may have been necessary to support Petitioner's applications for PPP loan assistance, as they were the means of proving Acuity and Storymark were small businesses. Nowhere did SmartBank indicate Petitioner should *exclude* independent contractor payments from Petitioner's PPP Loan calculations, or, that payments made to independent contractors or cash compensation paid to employees would be excluded from PPP Loan forgiveness eligibility.

61.　　SmartBank informed Petitioner of information missing, recalculations necessary, and PPP Loan eligibility and PPP Loan forgiveness requirements. Petitioner relied upon SmartBank's instructions, documented through telephone

calls and email correspondence, to qualify for both PPP Loan eligibility and full PPP Loan forgiveness.

62.     Based upon the two resubmitted PPP Loan applications Petitioner transmitted to SmartBank for Acuity and Storymark, Petitioner understood that Acuity and Storymark each qualified for a PPP Loan in an amount determined by SmartBank, while acting as an agent for the SBA. SmartBank provided Petitioner with specific instructions through those teleconferences, email messages and their attachments. Petitioner maintained good cause to understand SmartBank was acting as an agent of the SBA to confirm Petitioner's information transmitted to SmartBank was acceptable and consistent with SBA rules before the information was transmitted to the SBA.

63.     On Sunday, April 19, 2020, SmartBank transmitted the PPP Loan documents for each of Petitioner's two PPP loans. Petitioner reviewed and digitally-executed each of the PPP loan documents for Acuity and Storymark that day.

64.     On April 20, 2020, SmartBank (the SBA) confirmed that Acuity was eligible for a PPP Loan. SmartBank (the SBA) funded a PPP Loan for Acuity in the amount of $111,900.

65.     Also on April 20, 2020, SmartBank (the SBA) confirmed that Storymark was eligible for a PPP Loan. SmartBank (the SBA) funded a PPP Loan for Storymark in the amount of $125,500.

66.     On April 21, 2020, Petitioner transmitted email correspondence to SmartBank clearly expressing his intent to seek "100% loan forgiveness".

Petitioner wrote, in part, "Please let us know anything you may need so that we may begin preparing our efforts to help SmartBank now."

67.     SmartBank, as an agent of the SBA, had a duty to act in Petitioner's best interests, but it either knew, or should have known, that it was using the wrong rules. SmartBank's misrepresentations to the Petitioner in communications and SmartBank's disclosures compounded the problem further. As a result of SmartBank's negligence or greed, Petitioner ended up with PPP Loans the SBA refused to forgive.

68.     Once Petitioner's two PPP Loan application documents were received, reviewed, processed and approved by SmartBank, Petitioner was required to execute a Promissory Note ("Note") with SmartBank prior to each loan's disbursement. SmartBank's Note excluded any reference to Petitioner's PPP Loan calculation, SmartBank's modified PPP Loan amount formula, information relied upon or utilized, or Petitioner's inclusion or exclusion of independent contractors or cash compensation paid to employees.

69.     SmartBank's actions, as an agent of the SBA, damaged Petitioner. SmartBank repeatedly represented to the Petitioner that as long as applicants were eligible for PPP Loans and the PPP Loan was used primarily for payroll and other authorized expenses, the PPP Loans would be fully forgiven. SmartBank excluded from their representations made to the Petitioner, however, that SmartBank's determination of Petitioner's PPP Loan eligibility, and SmartBank's recalculation of Petitioner's PPP Loan amount, would not be forgiven by the SBA but would

29

rather be the sole responsibility of the Petitioner.

70.    Petitioner relied upon the SBA's/SmartBank's representations when applying – and reapplying – for each of Petitioner's two PPP Loans, expecting SmartBank, as an agent of the SBA, would comply with the SBA's rules and to disclose any deficiencies that may impact the SBA's willingness to forgive either of Petitioner's PPP Loans.  SmartBank knew, or should have known, the critical benefit offered by the PPP was loan forgiveness, and thus the Petitioner, who had never previously applied for nor received any business loan, ever, was seeking PPP Loans because Petitioner expected each PPP Loan would be forgiven if Petitioner complied with the SBA's PPP terms, including immediate disbursement of the entirety of PPP Loan funds exactly as required.

71.    Petitioner would not have applied for non-compliant PPP Loans had the SBA/SmartBank instructed Plaintiff properly; that is, that a small business organized as a sole proprietorship could receive one PPP Loan, not two, as the SBA/SmartBank ultimately issued to the Petitioner for Acuity and for Storymark, or, alternatively, that the SBA would rely upon guidance issued at the time the SBA/SmartBank issued each of Petitioner's two PPP Loans to grant forgiveness for each loan issued to Acuity and Storymark.  For good cause, Petitioner relied upon SmartBank, as an agent of the SBA, to examine each of his PPP Loan applications to determine each company's loan eligibility.  Ultimately, the SBA determined Petitioner was ineligible for Acuity's PPP Loan SmartBank issued to him, and the SBA abandoned Storymark's PPP Loan forgiveness application (Application)

30

because SmartBank reported to the SBA that the PPP Loan had been "cancelled."

**C.    The SBA and SmartBank Misrepresented Plaintiff's PPP Loan Eligibility**

72.    Upon applying for PPP Loan forgiveness, Petitioner was informed that he was ineligible to receive a PPP Loan, that Petitioner could not have received two PPP Loans as a sole proprietor (and requiring Petitioner to repay the entirety of his second PPP Loan after all of the funds had already been disbursed exactly as the SBA required and as SmartBank instructed Petitioner for qualification of full PPP Loan forgiveness), and that each of Petitioner's two PPP Loans was overfunded or should never have been funded to begin with and thus could not be forgiven by the SBA.

73.    Petitioner would not have applied for these PPP Loans at all, or would have applied for a lesser amount, were it not for the SBA's and SmartBank's misrepresentations. And now, economic conditions prevent Petitioner from paying back the PPP Loans the SBA and SmartBank assured Petitioner would be forgiven.

**D.    Petitioner Materially Relied Upon the SBA's Representations Made Through its Agent, SmartBank, to His Detriment**

**1.    Acuity Consulting Services (Erik Cooper, Sole Proprietor)**

74.    Petitioner Erik Cooper has been employed in the risk management and insurance industry for more than 30 years. Petitioner has served clients in both litigated and non-litigated commercial property and casualty insurance matters. Petitioner has also served clients as a litigation consultant in complex mass tort civil action matters. Petitioner is the owner and operator of Acuity,

31

a private risk management and litigation consulting practice.

75.     In March 2020, at the beginning of the unfolding COVID-19 pandemic when businesses were facing mandatory closures due to the declaration of a public health emergency and the need to slow the spread of COVID-19, Acuity began receiving solicitations from SmartBank to apply for a PPP Loan.

76.     At the time, Acuity employed around seven employees with an average monthly payroll of approximately $44,769.   In tax year 2019, Acuity issued Petitioner Erik Cooper a 1099-MISC indicating Petitioner's nonemployee compensation in the amount of $20,689.70.   Therefore, while Acuity was eligible for PPP Loan relief as a small business, PPP Loan funds could not be used to pay independent contractors and later be forgiven by the SBA.

77.     Had Acuity been permitted to borrow only the amounts needed to cover rent and other non-labor expenses, SmartBank's fees for originating Acuity's PPP Loan would have decreased significantly.   Therefore, SmartBank was incentivized to increase the amount of Acuity's PPP Loan so SmartBank could collect the resulting commission fees for SmartBank, and by extension, for compensation paid SmartBank to its lending employee.  SmartBank represented to Petitioner that by switching Acuity's 1099 workers over to W-2 employees prior to applying, Acuity could receive a larger PPP Loan and Acuity's PPP Loan would be forgiven so long as Acuity otherwise qualified for relief and used the PPP Loan for Acuity's payroll, interest on mortgage obligations, rent under lease agreements, and utilities during the covered period.

78. To qualify employees as W-2 workers and not as 1099 workers, the SBA/SmartBank did not require Acuity provide to SmartBank any W-2 forms for 2019 or 2020, rather, instructed Petitioner to provide Acuity's "anticipated payroll statement for 2020 (and 2019, if available)." In SmartBank's April 8, 2020 email communication to the Petitioner, "For sole proprietors without a payroll to employees or themselves, it is net income on Schedule C, divided by 12, and then multiplied by 2.5."

79. Petitioner informed the SBA/SmartBank in writing that he had "no 1099-MISCs, no tax records (and having filed no taxes for 2019 yet since, as a sole proprietor, none are due until June 15th under the current extension, and no one has asked for any previous tax years), much of what is included in SmartBank's checklist is not available to me for either of two businesses" (Acuity or Storymark).

80. On April 10, 2020, Acuity submitted its PPP Loan documents to the SBA/SmartBank and requested confirmation of SmartBank's submission of those documents to the SBA. Instead, that same day, SmartBank asked Petitioner in an email reply, "Can you go back in and recalculate your average monthly income for both businesses, not including monthly compensation for any individual of more than $8,333.33 (that comes to $100M [sic] annually), as compensation exceeding that amount is expressly excluded in the interim final rule published by the SBA?"

81. While Acuity could recalculate its PPP Loan amount as SmartBank instructed, SmartBank instead offered to recalculate Acuity's PPP Loan amount themselves. In Petitioner's April 11, 2020 email correspondence to SmartBank,

"I can recalculate my submission, but understood from [SmartBank employee] Joel Beavers that he was doing that with my express permission given by phone when you both called for our teleconference earlier today" (Saturday, April 11, 2020).

82.     SmartBank's Joel Beavers replied to Petitioner's emailed concern, "After we ended our phone call yesterday, it occurred to Gus [Floodquist] and I that the more appropriate thing to do [would] be to let you recalculate your monthly payroll costs and submit a revised application based on that analysis."

83.     As the SBA/SmartBank instructed, Petitioner recalculated his PPP Loan amount based upon SmartBank's instructions, revised and resubmitted Acuity's PPP Loan application to SmartBank. Acuity created and transmitted to the SBA/SmartBank a 2020 Payroll Register as SmartBank instructed Petitioner to create, and included the document in his PPP Loan documents submitted to determine Petitioner's eligibility to receive a PPP Loan. Acuity's qualification documents included Petitioner Erik Cooper's 2019 1099-MISC form, Acuity's 2020 Payroll Register, Acuity's PPP Loan application, Acuity's IRS Form W-9, and a copy of Petitioner's drivers license. Nothing more was required of the Petitioner by the SBA/SmartBank to determine Petitioner's eligibility for a PPP Loan.

84.     SmartBank, acting for and on behalf of the SBA, reviewed, processed, approved and funded Acuity's PPP Loan in the amount of $111,900 and instructed Petitioner to immediately begin disbursement of the PPP Loan funds and to complete full utilization of the entirety of PPP Loan funds by the end of SmartBank's calculated eight-week period.

34

85.     Acuity followed the SBA's/SmartBank's instructions explicitly and utilized the PPP Loan primarily to maintain payroll costs for its employees during the covered period, expecting the entirety of Acuity's $111,900 PPP Loan would be forgiven by the SBA if Petitioner maintained proof of such utilization of the funds.

86.     Acuity first applied for PPP Loan forgiveness through SmartBank on March 30, 2021, and resubmitted Acuity's Application to SmartBank on March 31, 2021, April 5, 2021, and again on April 7, 2021. Petitioner concurrently transmitted his Application for Storymark on each occasion. Each Application contained Petitioner's social security number. SmartBank, the SBA's agent, refused to transmit Petitioner's Applications to the SBA for PPP Loan forgiveness.

87.     In June 2021, SmartBank requested Petitioner change his "Business Taxpayer Identification Number (EIN, SSN)" on his Acuity Application from Petitioner's social security number to Petitioner's Employer Identification Number ("EIN"), leaving Storymark's Application unchanged and bearing Petitioner's social security number. SmartBank informed Petitioner it hoped the altered taxpayer identification number would cause the SBA to forgive each PPP Loan.

88.     Petitioner refused to alter, amend, or revise his Applications.

89.     SmartBank received, reviewed, approved, and recommended to the SBA that Acuity receive full PPP Loan forgiveness.

90.     On July 28, 2020, SmartBank transmitted email correspondence to the Petitioner pertaining to Acuity's Application and attached a communication SmartBank had received from the SBA reading, "SBA has discovered that this

borrower has more than one PPP loan with your lending institution and the other listed below (also SmartBank). Policy states that a borrower may only have one PPP loan. Please reach out to the borrower to notify them that they will need to choose which of the two institutions they will be doing business with, and that they must return the funds to the other lender and have them cancel that loan."

91.     On or about August 20, 2021, SmartBank issued, then apologized for and retracted, a PPP Loan repayment notice to Acuity.[22]

92.     Acuity applied for, was denied, reapplied for, and was denied again PPP Loan forgiveness.

93.     On December 14, 2021, the SBA issued a Final Loan Review Decision Letter ("FLRD") for Acuity's PPP Loan and denied forgiveness, citing the following basis for its determination: "Negative income from 2019 1040/Schedule C. The borrower was unresponsive to request for documentation regarding the above issue, therefore a recommendation of denial."

94.     Immediately following Petitioner's receipt of the SBA's FLRD, Petitioner learned that, despite SmartBank's representations made to him that SmartBank had transmitted all documents requested by the SBA to achieve Acuity's full PPP Loan forgiveness, SmartBank had not transmitted those documents to the SBA in violation of the Lender Agreement.

---

22   "Please accept my apologies for sending the two billing statements last week as this was an error." [Email correspondence transmitted to Plaintiff from SmartBank's legal counsel Matt Daugherty, copied to Defendant Floodquist and SmartBank's Richard McWhorter.]

95.    Petitioner appealed the SBA's FLRD to the Office of Hearings and Appeals ("OHA"). [13 C.F.R. § 134.1201(b)]. The SBA filed a motion to dismiss the appeal stating the SBA wished to review again Acuity's PPP Loan forgiveness application, and the OHA granted the motion.

96.    The SBA again reviewed Acuity's PPP Loan forgiveness application and, on December 21, 2022, issued another FLRD, this time determining Acuity "was ineligible for the PPP loan. ... After a review of the documentation provided it has been determined that the borrower has received more than one PPP loan. A borrower may receive only one First Draw PPP Loan and one Second Draw PPP Loan. ... Moreover, the SBA requested the following information to recalculate the origination amount, determine the borrower's eligibility, and/or support forgiveness. Documents requested consisted of 2018, 2019 and 2020 IRS tax return transcripts, signed 4506-C and lender's calculation of a loan amount at origination."

97.    Again, Petitioner appealed the SBA's second FLRD and again, the SBA's OHA granted the SBA's motion and dismissed the appeal, remanding Acuity's Application to the SBA for further review.

98.    For a third time, on January 21, 2025, the SBA issued another FLRD, this time determining Acuity "was ineligible for the PPP loan amount" because "Borrower applied for the PPP loan 4/7/2020 referencing an average monthly payroll of $50,700. In review of the documentation provided there is no record of wages paid in 2019. Borrower stated that 'the borrower's anticipated 2020 payroll register was used to arrive at the average monthly payroll.' However, on the

borrower application form 2483 available at the time of the application, the following information was provided in the Instructions for completing this form: For purposes of calculating 'Average Monthly Payroll,' most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. … For new businesses, average monthly payroll may be calculate using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee. Borrower applied for the loan under these requirements but stated that an amount not provided for in the instructions was used. After a review of the documentation provided, the SBA concludes that there are material discrepancies which cause the borrower to be ineligible for the PPP loan."

99. Again, Petitioner appealed the SBA's third FLRD, however, due to interrupted Internet service caused by seasonal weather, Petitioner's third OHA appeal was not received timely. As a result, the OHA dismissed the appeal.

100. Petitioner filed a petition for reconsideration of the OHA's dismissal of Petitioner's third appeal of the SBA's decision pertaining to Acuity's Application, with an accompanying declaration and evidence of the weather-related transmittal interruption. On March 4, 2025, OHA administrative judge Gerald J. Hill denied the petition finding "An OHA judge must dismiss an untimely appeal. … A request for reconsideration must clearly show an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c). … Appellant successfully filed the appeal petition on the OHA case portal on February 21, 2025. Appellant makes a substantial showing of

good cause for filing the appeal petition one day after the deadline specified in 13 C.F.R. § 134.1202(a). However, the PFR does not clearly show an error of fact or law material to the dismissal order. Even if I could have considered Appellant's justification for late filing before I issued the dismissal order, I still would have had no choice but to dismiss the appeal. 'A Judge may modify any time period or deadline, except: (A) the time period governing the commencement of a case (i.e., when the appeal petition may be filed); and (B) a time period established by statute.' 13 C.F.R. § 134.1202(c)(3)(i)."

101. The OHA maintained discretion and authority to apply equitable tolling under 13 C.F.R. § 134.1205(a)(2), but failed to do so.

102. "Time bars in suits against the government are presumptively subject to equitable tolling." [*See e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)].

103. The power to impose jurisdictional bars resides only with Congress, not administrative agencies. [*See e.g.*, *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 133 (2nd Cir. 2000)].

104. The SBA Administrator did not exercise her discretion to review or reverse the OHA's decision to dismiss the appeal. [*See*, 13 C.F.R. § 13.1211(c)(3), (d)].

105. Accordingly, the SBA's decision became final on April 3, 2025, thirty days following entry of the OHA's order denying Petitioner's petition for reconsideration. [*See*, 13 C.F.R. § 13.1211(c)(3)].

/////

106. SmartBank recently issued Petitioner notice demanding repayment of Acuity's unforgiven PPP Loan.

107. To date, Acuity has been denied any PPP Loan forgiveness.

108. Acuity only applied for the PPP Loan based upon the material representations made by SmartBank, the SBA's authorized lending agent, claiming Acuity was eligible for a PPP Loan.

109. Acuity only applied for the PPP Loan amount based upon the material representations made by SmartBank requiring Petitioner to utilize SmartBank's methodology to qualify for Acuity's PPP Loan amount. Acuity would not have applied for or accepted a PPP Loan had Petitioner known that Acuity was ineligible for a PPP Loan or for the PPP Loan amount determined by the SBA/SmartBank. Petitioner was specific and adamant in his communication with SmartBank: Plaintiff only desired a PPP Loan for Acuity if the loan was eligible for 100% forgiveness.

110. Acuity submitted documents requested by the SBA/SmartBank to qualify and be determined eligible to receive a PPP Loan. Upon receipt of those documents, the SBA/SmartBank reviewed, processed and approved Acuity's PPP Loan application, and the SBA/SmartBank funded Acuity's PPP Loan in the amount of $111,900, an amount calculated by the SBA/SmartBank.

111. Acuity has obtained a debt Petitioner cannot repay. Petitioner accepted the PPP Loan solely because the SBA/SmartBank claimed Acuity was eligible for a PPP Loan and because the SBA/SmartBank promised the debt would

be entirely forgiven if the PPP Loan funds were exactly as required.

112. Today, SmartBank demands Petitioner repay SmartBank for the loan, with interest.

113. Acuity terminated the employment of all of its employees.

114. Petitioner now appeals the SBA's and OHA's final decision under 13 C.F.R. § 134.1211(g), which permits appeal of a final decision "to the appropriate federal district court only."

### 2. Storymark Entertainment (Erik Cooper, Sole Proprietor)

115. In 2006, Petitioner Erik Cooper created Storymark Entertainment, an entertainment company organized as a sole proprietorship. Storymark distributed content created or produced by Storymark Productions.

116. In March 2020, at the beginning of the unfolding COVID-19 pandemic when businesses were facing mandatory closures due to the declaration of a public health emergency and the need to slow the spread of COVID-19, Storymark began receiving solicitations from SmartBank to apply for a PPP Loan.

117. At the time, Storymark employed around six employees with an average monthly payroll of approximately $50,209. In tax year 2019, Storymark issued Petitioner Erik Cooper a 1099-MISC indicating Petitioner's nonemployee compensation in the amount of $24,500.00. Therefore, while Storymark was eligible for PPP Loan relief as a small business, PPP Loan funds could not be used to pay independent contractors and later be forgiven by the SBA.

/////

41

118. Had Storymark been permitted to borrow only the amounts needed to cover rent and other non-labor expenses, SmartBank's fees for originating Storymark's PPP Loan would have decreased significantly. Therefore, SmartBank was incentivized to increase the amount of Storymark's PPP Loan so SmartBank could collect the resulting commission fees for SmartBank, and by extension, for compensation paid SmartBank employees. SmartBank represented to Petitioner that by switching Storymark's 1099 workers over to W-2 employees prior to applying, Storymark could receive a larger PPP Loan and Storymark's PPP Loan would be forgiven so long as Storymark otherwise qualified for relief and used the PPP Loan for Storymark's payroll, interest on mortgage obligations, rent under lease agreements, and utilities during the covered period.

119. To qualify employees as W-2 workers and not as 1099 workers, the SBA/SmartBank did not require Storymark provide to SmartBank any W-2 forms for 2019 or 2020, rather, instructed Petitioner to provide Storymark's "anticipated payroll statement for 2020 (and 2019, if available)." In Defendants' April 8, 2020 email communication to the Petitioner, "For sole proprietors without a payroll to employees or themselves, it is net income on Schedule C, divided by 12, and then multiplied by 2.5."

120. Petitioner informed the SBA/SmartBank in writing that he had "no 1099-MISCs, no tax records (and having filed no taxes for 2019 yet since, as a sole proprietor, none are due until June 15th under the current extension, and no one has asked for any previous tax years), much of what is included in SmartBank's

checklist is not available to me for either of two businesses" (Storymark or Acuity).

121. On April 10, 2020, Storymark submitted its PPP Loan documents to SmartBank and requested confirmation of SmartBank's submission of those documents to the SBA. Instead, that same day, SmartBank asked Petitioner in an email reply, "Can you go back in and recalculate your average monthly income for both businesses, not including monthly compensation for any individual of more than $8,333.33 (that comes to $100M [sic] annually), as compensation exceeding that amount is expressly excluded in the interim final rule published by the SBA?"

122. While Storymark could recalculate its PPP Loan amount as SmartBank instructed, SmartBank instead offered to recalculate Storymark's PPP Loan amount themselves. In Petitioner's April 11, 2020 email correspondence to SmartBank, "I can recalculate my submission, but understood from [SmartBank employee] Joel Beavers that he was doing that with my express permission given by phone when you both called for our teleconference earlier today" (Saturday, April 11, 2020).

123. SmartBank's Joel Beavers replied to Petitioner's emailed concern, "After we ended our phone call yesterday, it occurred to Gus [Floodquist] and I that the more appropriate thing to do [would] be to let you recalculate your monthly payroll costs and submit a revised application based on that analysis."

124. As the SBA's agent, SmartBank, instructed, Petitioner recalculated his PPP Loan amount based upon SmartBank's instructions, revised and resubmitted Storymark's PPP Loan application to SmartBank. Storymark created

43

and transmitted to SmartBank a 2020 Payroll Register as SmartBank instructed Petitioner to create, and included the document in his PPP Loan documents submitted to determine Petitioner's eligibility to receive a PPP Loan. Storymark's qualification documents included Petitioner Erik Cooper's 2019 1099-MISC form, Storymark's 2020 Payroll Register, Storymark's PPP Loan application, Storymark's IRS Form W-9, and a copy of Petitioner's drivers license. Nothing more was required of the Petitioner by the SBA/SmartBank to determine Petitioner's eligibility for a PPP Loan.

125. SmartBank, acting for and on behalf of the SBA, reviewed, processed, approved and funded Storymark's PPP Loan in the amount of $125,500 and instructed Petitioner to immediately begin disbursement of the PPP Loan funds and to complete full utilization of the entirety of PPP Loan funds by the end of SmartBank's calculated eight-week period.

126. Storymark followed the SBA's/SmartBank's instructions explicitly and utilized the PPP Loan primarily to maintain payroll costs for its employees during the covered period, expecting the entirety of Storymark's $125,500 PPP Loan would be forgiven by the SBA if Petitioner maintained proof of such utilization of the loan's funds.

127. Storymark first applied for PPP Loan forgiveness through SmartBank on March 30, 2021, and resubmitted Storymark's PPP Loan forgiveness documents to SmartBank on March 31, 2021, April 5, 2021, and again on April 7, 2021. SmartBank received, reviewed, approved, and recommended to the SBA that

Storymark receive full PPP Loan forgiveness.

128.    Storymark first applied for PPP Loan forgiveness through SmartBank on March 30, 2021, and resubmitted Storymark's Application to SmartBank on March 31, 2021, April 5, 2021, and again on April 7, 2021.    Petitioner concurrently transmitted his Application for Acuity on each occasion.    Each Application contained Petitioner's social security number.    SmartBank, the SBA's agent, refused to transmit Petitioner's Applications to the SBA for PPP Loan forgiveness.

129.    In June 2021, SmartBank requested Petitioner change his "Business Taxpayer Identification Number (EIN, SSN)" on his Acuity Application from Petitioner's social security number to Petitioner's Employer Identification Number ("EIN"), leaving Storymark's Application unchanged and bearing Petitioner's social security number.    SmartBank informed Petitioner it hoped the altered taxpayer identification number would cause the SBA to forgive each PPP Loan.

130.    Petitioner refused to alter, amend, or revise his Applications.

131.    SmartBank received, reviewed, approved, and recommended to the SBA that Storymark receive full PPP Loan forgiveness.

132.    On July 28, 2020, SmartBank transmitted email correspondence to Petitioner and attached therewith a communication SmartBank had received from the SBA reading, "SBA has discovered that this borrower has more than one PPP loan with your lending institution and the other listed below (also SmartBank). Policy states that a borrower may only have one PPP loan.  Please reach out to the borrower to notify them that they will need to choose which of the two institutions

45

they will be doing business with, and that they must return the funds to the other lender and have them cancel that loan."

133. Storymark applied for, was denied, reapplied for, and was denied again PPP Loan forgiveness.

134. SmartBank, the authorized SBA lending agent required to service Storymark's PPP Loan, received and ignored numerous items of correspondence transmitted to SmartBank concerning Storymark's PPP Loan and PPP Loan forgiveness application.

135. In October 2021, the SBA transmitted a request for documentation supporting the SBA's PPP Loan forgiveness determination. Petitioner complied with all of the SBA's requests.

136. On March 4, 2022, SmartBank issued, then again retracted, a PPP Loan repayment notice to Storymark.

137. Nearly one year later, in January 2023, Storymark transmitted letter correspondence to SmartBank requesting the status of its PPP Loan forgiveness application. Storymark received no response.

138. Two years following Storymark's January 2023 inquiry, Storymark again transmitted letter correspondence to SmartBank requesting the status of its PPP Loan forgiveness application. Storymark also contacted SBA district counsel David Higgs and learned Storymark's PPP Loan was "cancelled" by lender

───────────

23  "Please accept my apologies for sending the two billing statements last week as this was an error." [Email correspondence transmitted to Plaintiff from SmartBank's legal counsel Matt Daugherty, copied to Defendant Floodquist and SmartBank's Richard McWhorter.]

46

SmartBank. The SBA directed Petitioner, "You'll need to contact [SmartBank] for further information." Petitioner had already contacted SmartBank, however, in violation of the Lender Agreement, SmartBank had abandoned the Petitioner and his PPP Loans and refused to service the loan or respond to Plaintiff's multi-year inquiries.

139. On March 3, 2025, SBA representative Denise Grugan copied Petitioner on email correspondence she transmitted to another SBA colleague, Erika [Last Name Unknown] writing, "Any suggestions how I should respond to this borrower? It was assigned to me this morning. In the OHA case portal its status is "complete." According to CAFS the loan's status is 'cancelled'. CAFS also list[s] a slew of holds on the loan. Borrower is asking for the appeal, but it is in the docket section of the OHA case portal. Borrower's time for filing an appeal has passed. Should I resend the FLRD?"

140. No FLRD has ever been issued or provided to Petitioner for Storymark's PPP Loan. Without receipt of a FLRD, Storymark was unable to appeal any decision reached by the SBA, and by this time, SmartBank had outright abandoned the Petitioner, his businesses, and Storymark's PPP Loan.

141. In reply to Storymark's inquiry for SmartBank's "cancellation" of Storymark's PPP Loan, on March 5, 2025, SmartBank's outside legal counsel, Gordon Dean Foster ("Mr. Foster"), authored a letter to the Plaintiff stating, "I write in response to your letter dated March 4, 2025 to [SmartBank President and Chief Executive Officer] William 'Billy' Carroll, Jr. The Bank advises me that it has never

'cancelled' the subject loan. As you know or should know, the SBA determined that the loan did not qualify for the Paycheck Protection Program. As such, you are liable to the Bank for the loan balance."

142. SmartBank's and the SBA's conflicting responses revealed vacillating, erroneous and inconsistent information communicated to the Petitioner in violation of the SBA's and SmartBank's Lender Agreement.

143. Prior to determination by the SBA of SmartBank's "cancellation" of Storymark's PPP Loan as revealed to the Petitioner in March 2025, SmartBank filed civil litigation against Plaintiff and his Storymark Entertainment sole proprietorship. The matter, styled *SmartBank v. Erik Cooper, dba Storymark Entertainment*, was filed in the Chancery Court for Sevier County, Tennessee and assigned case number 23-7-18 ("State Court Action"). The State Court Action remains pending upon the filing of this instant Complaint.

144. No FLRD had ever been issued by the SBA because, according to the SBA, SmartBank had "cancelled" Storymark's PPP Loan on an undetermined date. Without a FLRD, Petitioner was unable to pursue his right to appeal the SBA's decision by filing his appeal with the SBA's OHA.

145. SmartBank knew or should have known that SmartBank cancelled Storymark's PPP Loan and reported its cancellation to the SBA as represented to the Petitioner by SBA representatives David Higgs and Denise Grugan, but withheld from Petitioner by SmartBank.

/////

146. To date, Storymark has been denied any PPP Loan forgiveness.

147. Storymark only applied for the PPP Loan based upon the material representations made by SmartBank claiming Storymark was eligible for a PPP Loan.

148. Storymark only applied for the PPP Loan amount based upon the material representations made by SmartBank requiring Petitioner to utilize the SBA's/SmartBank's methodology to qualify for Storymark's PPP Loan amount. Storymark would not have applied for or accepted a PPP Loan had Petitioner known that Storymark was ineligible for a PPP Loan or for the PPP Loan amount determined by the SBA/SmartBank. Petitioner was specific and adamant in his communication with SmartBank: Petitioner only desired a PPP Loan for Storymark if the loan was eligible for 100% forgiveness.

149. Storymark submitted documents requested by the SBA/SmartBank to qualify for and be determined eligible to receive a PPP Loan. Upon receipt of those documents, the SBA/SmartBank reviewed, processed and approved Storymark's PPP Loan application, and the SBA/SmartBank funded Storymark's PPP Loan in the amount of $125,500, an amount calculated by the SBA/SmartBank.

150. Storymark has obtained a debt Petitioner cannot repay. Petitioner accepted the PPP Loan solely because the SBA/SmartBank claimed Storymark was eligible for a PPP Loan and because the SBA/SmartBank promised the debt would be entirely forgiven if the PPP Loan funds were exactly as required.

/////

49

151. Today, SmartBank demands Petitioner repay SmartBank for the loan, with interest.

152. Storymark terminated the employment of all of its employees.

## CLAIMS FOR RELIEF

153. The APA provides that "[a] person suffering from legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof." [*See*, 5 U.S.C. § 702].

154. The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." [*See*, 5 U.S.C. § 704].

155. The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." [*See*, 5 U.S.C. § 706(2)(A), (E)].

156. "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" [*See e.g., Caperton v. A.T. Massey Coal*, 556 U.S. 868, 876 (2009); accord *William Jefferson & Co. v. Bd. of Ass'mt*, 695 F.3d 960, 963-64 (9th Cir. 2012) (applying *Caperton* to local agency process)]. This applies to administrative agencies which adjudicate as well as to courts.

157. The process for "agency adjudication" should be "characterized by the same degree of procedural integrity and independence as the judicial process." [*See e.g., Harline v. DEA*, 148 F.3d 1199, 1205 (10th Cir. 1998)].

50

158.    A private party in any government tribunal must have "a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." [*See e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (204); accord *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 799 (6th Cir. 2018) (applying *Hamdi* to administrative agency adjudication).

159.    This Court is authorized and empowered to review the SBA Final Loan Review Decision (FLRD) and any initial decisions for errors. The FLRD was erroneous as a matter of law, constituted arbitrary and/or capricious conduct by the SBA, or, alternatively, was an abuse of discretion.

160.    The FLRD should be reversed and set aside as arbitrary and capricious, or, alternatively, as an abuse of discretion. [*See*, 5 U.S.C. 706(2)(A)].

161.    There is an actual and existing controversy between the parties as to the correctness of the SBA's FLRD to deny PPP Loan forgiveness to Acuity, the SBA's denial of Acuity's appeal of PPP Loan forgiveness denial as untimely, and, the SBA's abandonment of Storymark's PPP Loan forgiveness application because the SBA considers the matter "cancelled".

162.    The SBA's determination of Storymark's PPP Loan as "cancelled" and abandonment of Storymark's PPP Loan forgiveness application was legal error, was arbitrary and capricious, was made in excess of the SBA's statutory authority, and constituted an abuse of discretion (to the extent the SBA had such discretion).

163.    Petitioner is entitled to a judgment declaring the SBA's denial of Petitioner's PPP Loan forgiveness for Acuity was legal error, was arbitrary and

capricious, and was made in excess of the SBA's statutory authority and short of Petitioner's statutory rights, or, in the alternative, constituted an abuse of discretion.

164.    Petitioner is entitled to a judgment declaring the SBA's denial of Petitioner's appeal of the SBA's FLRD denying PPP Loan forgiveness for Acuity was legal error, was arbitrary and capricious, and was made in excess of the SBA's statutory authority and short of Petitioner's statutory rights, or, in the alternative, constituted an abuse of discretion.

165.    Petitioner is entitled to a judgment declaring the SBA's denial of Petitioner's PPP Loan forgiveness for Storymark was legal error, was arbitrary and capricious, and was made in excess of the SBA's statutory authority and short of Petitioner's statutory rights, or, in the alternative, constituted an abuse of discretion.

166.    Petitioner is entitled to a judgment declaring that Petitioner's PPP Loans for Acuity and for Storymark should be forgiven.

167.    Respondents' actions are in violation of the Administrative Procedures Act (APA), the CARES Act, and other applicable laws and regulations, including, without limitation, the SBA's own regulations and practices.

/////

## FIRST CAUSE OF ACTION

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)

**(SBA Lacks a Statutory or Regulatory Basis to Deny Petitioner PPP Loan Forgiveness Due to Petitioner's "Ineligibility" to Receive a PPP Loan for Acuity and for Storymark Organized as Sole Proprietorships)**

168.   Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

169.   The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law...[or]...unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." [*See*, 5 U.S.C. § 706(2)(D), (E), (F)].

170.   In denying PPP Loan forgiveness of the Acuity and Storymark loans, the SBA acted contrary to law in violation of applicable law and regulations.

171.   Specifically, and without limitation, available guidance at the time the SBA issued each of two PPP Loans to the Petitioner permitted a sole proprietor to receive a PPP Loan for each sole proprietorship business. The SBA violated this regulation when the SBA denied PPP Loan forgiveness for Petitioner's PPP Loan for Acuity. For good cause and reasonable belief, the SBA may also have violated this regulation when the SBA denied PPP Loan forgiveness for Petitioner's PPP Loan for Storymark.

53

172.   In accordance with 5 U.S.C. § 706(2), this Honorable Court must therefore hold unlawful and set aside the SBA's FLRD denying Petitioner's PPP Loan forgiveness based upon the Petitioner's ineligibility for a PPP Loan for Acuity. Additionally, and notwithstanding the foregoing, in accordance with 5 U.S.C. § 706(2)(A), this Honorable Court must also therefore hold unlawful and set aside the SBA's abandonment of Petitioner's PPP Loan forgiveness for Storymark because the SBA believes the loan was "cancelled" by the lender (SmartBank).

## SECOND CAUSE OF ACTION

**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)**

**(SBA Lacks a Statutory or Regulatory Basis to Deny
Petitioner PPP Loan Forgiveness Alleging Acuity
"Was Ineligible for the PPP Loan Amount")**

173.   Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

174.   The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law…[or]…unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." [*See*, 5 U.S.C. § 706(2)(D), (E), (F)].

175.   In denying PPP Loan forgiveness of the Acuity loan, the SBA acted contrary to law in violation of applicable law and regulations.

176. Specifically, and without limitation, available guidance at the time the PPP Loan was issued permitted the SBA's agent, SmartBank's, calculation of the Petitioner's PPP Loan amount for Acuity. Additionally, available guidance at the time the PPP Loan was issued permitted the SBA's agent, SmartBank, to review documentation supporting the SBA's guidelines to qualify Acuity's PPP Loan amount.

177. In accordance with 5 U.S.C. § 706(2), this Honorable Court must therefore hold unlawful and set aside the SBA's FLRD denying Petitioner's PPP Loan forgiveness based upon the Petitioner's ineligibility for the PPP Loan amount the SBA's agent, SmartBank, calculated and granted for Acuity.

### THIRD CAUSE OF ACTION

**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1) and (2)**

**(SBA Lacks a Statutory or Regulatory Basis to Abandon Petitioner's PPP Loan Forgiveness for Storymark Due to the SBA's Belief That its Agent, SmartBank, "Cancelled" the PPP Loan)**

178. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

179. The APA provides that a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed[.]" [*See*, 5 U.S.C. § 706(1)].

180. The APA further provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law…[or]…unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed

on the record of an agency hearing provided by statute; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." [*See*, 5 U.S.C. § 706(2)(D), (E), (F)].

181. In denying PPP Loan forgiveness of the Storymark loan, the SBA acted contrary to law in violation of applicable law and regulations.

182. Specifically, and without limitation, available guidance at the time the SBA issued each of two PPP Loans to the Petitioner granted the SBA's agent, SmartBank, authority to review, process, approve, and fund Petitioner's PPP Loan for Storymark.

183. Petitioner and Storymark complied with all requirements set forth by the SBA to achieve full forgiveness of the entirety of Storymark's $125,500 loan.

184. The SBA breached its agreement with Petitioner by denying PPP Loan forgiveness.

185. SmartBank, acting as the SBA's agent, breached its agreement with the SBA to service Petitioner's PPP Loan for Storymark. Among other violations of the Lender Agreement, such violation occurred upon failure of SmartBank to timely remit Petitioner's PPP Loan forgiveness application (Application) to the SBA for forgiveness, upon SmartBank's demand for Petitioner to submit an Application for Storymark utilizing an alternative taxpayer identification number, upon SmartBank's outright abandonment of the Petitioner and his PPP Loans, and upon SmartBank's "cancellation" of Storymark's loan and notice of such "cancellation" given by SmartBank to the SBA.

186. In accordance with 5 U.S.C. § 706(1) and (2), this Honorable Court must therefore hold unlawful the SBA's abandonment and denial of Petitioner's PPP Loan forgiveness for Storymark.

## FOURTH CAUSE OF ACTION

**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)**

**(SBA Lacks a Statutory or Regulatory Basis to Deny Petitioner PPP Loan Forgiveness for Acuity Due to Equitable Tolling)**

187. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

188. The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be without observance of procedure required by law...[or]...unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." [*See*, 5 U.S.C. § 706(2)(D), (E), (F)].

189. In denying PPP Loan forgiveness of the Acuity loan, the OHA held that it could not apply equitable tolling as a matter of law.

190. The OHA's decision was contrary to law.

191. Numerous cases have confirmed that equitable tolling principles apply in administrative settings. [*See e.g.*, *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 832 (7th Cir. 2021) (discussing standard of judicial review on an agency's refusal to equitably toll a time limit and assembling cases); *Turgeau v.*

*Admin. Rev. Bd.*, 446 F.3d 1052, 1056 (10th Cir. 2006) (reversing agency's denial of equitable tolling and remanding to the agency with directions to toll the statute of limitations on the plaintiff's administrative claim)].

192. The United States Supreme Court has explained that the applicability of equitable tolling depends on Congress' enabling statute, not on an administrative agency's regulations, policies, or procedures. [*See e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (setting out the framework for deciding the applicability of equitable tolling statutes in suits against the Government)].

193. The *Irwin* case adopted the general rule that time bars in suits against the government are presumptively subject to equitable tolling. [*Id.* at 95-96].

194. The United States Supreme Court has repeatedly held that filing deadlines are subject to equitable tolling unless "Congress has clearly stated as much." [*See e.g.*, *United States v. Wong*, 575 U.S. 402, 407-412 (2015) (citations and internal quotations omitted)]. In applying the clear statement rule, the Supreme Court has said that most time bars, even if mandatory and emphatic, are nonjurisdictional. [*Id.*].

195. The OHA's dismissal of Petitioner's petition for reconsideration on the ground that the OHA has no discretion to apply equitable tolling is therefore an abuse of discretion and/or violated the CARES Act and is contrary to law.

196. Petitioner is entitled to OHA review of the SBA's denial of PPP Loan forgiveness for Petitioner's Acuity loan.

197. In accordance with 5 U.S.C. § 706(2), this Honorable Court must therefore hold unlawful the SBA's dismissal of Petitioner's appeal for Acuity's PPP Loan.

## FIFTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

### (Arbitrary and Capricious Action in Violation of the APA as to Petitioner's "Ineligibility" to Receive a PPP Loan for Acuity and for Storymark Organized as Sole Proprietorships)

198. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

199. The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" [*See*, 5 U.S.C. § 706(2)(A)].

200. In denying PPP Loan forgiveness of the Acuity and Storymark loans, the SBA acted arbitrarily, capriciously, and abused its discretion.

201. Specifically, and without limitation, available guidance at the time the SBA issued each of two PPP Loans to the Petitioner permitted a sole proprietor to receive a PPP Loan for each sole proprietorship business. The SBA violated this regulation when the SBA denied PPP Loan forgiveness for Petitioner's PPP Loan for Acuity. For good cause and reasonable belief, the SBA may also have violated this regulation when the SBA denied PPP Loan forgiveness for Petitioner's PPP Loan for Storymark.

202.   In accordance with 5 U.S.C. § 706(2)(A), this Honorable Court must therefore hold unlawful and set aside the SBA's FLRD denying Petitioner's PPP Loan forgiveness based upon the Petitioner's ineligibility for a PPP Loan for Acuity.

## SIXTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

**(Arbitrary and Capricious Action in Violation of the APA
Upon the SBA's Denial of PPP Loan Forgiveness Alleging
Acuity "Was Ineligible for the PPP Loan Amount")**

203.   Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

204.   The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"   [*See*, 5 U.S.C. § 706(2)(A)].

205.   In denying PPP Loan forgiveness of the Acuity and Storymark loans, the SBA acted arbitrarily, capriciously, and abused its discretion.

206.   Specifically, and without limitation, available guidance at the time the PPP Loan was issued permitted the SBA's/SmartBank's calculation of the Petitioner's PPP Loan amount for Acuity.  Additionally, available guidance at the time the PPP Loan was issued permitted the SBA and SmartBank to review documentation supporting the SBA's guidelines to qualify Acuity's PPP Loan amount.

/////

60

207.    In accordance with 5 U.S.C. § 706(2)(A), this Honorable Court must therefore hold unlawful and set aside the SBA's FLRD denying Petitioner's PPP Loan forgiveness based upon the Petitioner's ineligibility for the PPP Loan amount the SBA's agent, SmartBank, calculated and granted for Acuity.

## SEVENTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

**(Arbitrary and Capricious Action in Violation of the APA
Upon the SBA's Abandonment of Petitioner's PPP Loan
Forgiveness for Storymark Due to the SBA's Belief
That its Agent, SmartBank, "Cancelled" the PPP Loan)**

208.    Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

209.    The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"    [*See*, 5 U.S.C. § 706(2)(A)].

210.    In denying PPP Loan forgiveness of the Storymark loan, the SBA acted contrary to law in violation of applicable law and regulations.

211.    Specifically, and without limitation, available guidance at the time the SBA issued each of two PPP Loans to the Petitioner granted the SBA's agent, SmartBank, authority to review, process, approve, and fund Petitioner's PPP Loan for Storymark.

212.    Petitioner and Storymark complied with all requirements set forth by the SBA to achieve full forgiveness of the entirety of Storymark's $125,500 loan.

61

213. The SBA breached its agreement with Petitioner by denying PPP Loan forgiveness.

214. SmartBank, acting as the SBA's agent, breached its agreement with the SBA to service Petitioner's PPP Loan for Storymark. Among other violations of the Lender Agreement, such violation occurred upon failure of SmartBank to timely remit Petitioner's PPP Loan forgiveness application (Application) to the SBA for forgiveness, upon SmartBank's demand for Petitioner to submit an Application for Storymark utilizing an alternative taxpayer identification number, upon SmartBank's outright abandonment of the Petitioner and his PPP Loans, and upon SmartBank's "cancellation" of Storymark's loan and notice of such "cancellation" given by SmartBank to the SBA.

215. In accordance with 5 U.S.C. § 706(2)(A), this Honorable Court must therefore hold unlawful the SBA's abandonment and denial of Petitioner's PPP Loan forgiveness for Storymark.

## EIGHTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

### (Arbitrary and Capricious Action in Violation of the APA Upon the SBA's Decision to Deny Petitioner PPP Loan Forgiveness for Acuity Due to Equitable Tolling)

216. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

217. The APA provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law[.]" [*See*, 5 U.S.C. § 706(2)(A)].

218. In denying PPP Loan forgiveness of the Acuity loan, the OHA held that it could not apply equitable tolling as a matter of law.

219. The OHA's decision was contrary to law.

220. Numerous cases have confirmed that equitable tolling principles apply in administrative settings. [*See e.g.*, *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 832 (7th Cir. 2021) (discussing standard of judicial review on an agency's refusal to equitably toll a time limit and assembling cases); *Turgeau v. Admin. Rev. Bd.*, 446 F.3d 1052, 1056 (10th Cir. 2006) (reversing agency's denial of equitable tolling and remanding to the agency with directions to toll the statute of limitations on the plaintiff's administrative claim)].

221. The United States Supreme Court has explained that the applicability of equitable tolling depends on Congress' enabling statute, not on an administrative agency's regulations, policies, or procedures. [*See e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (setting out the framework for deciding the applicability of equitable tolling statutes in suits against the Government)].

222. The *Irwin* case adopted the general rule that time bars in suits against the government are presumptively subject to equitable tolling. [*Id.* at 95-96].

223. The United States Supreme Court has repeatedly held that filing deadlines are subject to equitable tolling unless "Congress has clearly stated as much." [*See e.g.*, *United States v. Wong*, 575 U.S. 402, 407-412 (2015) (citations and

internal quotations omitted)].  In applying the clear statement rule, the Supreme Court has said that most time bars, even if mandatory and emphatic, are nonjurisdictional.  [*Id.*].

224.    The OHA's dismissal of Petitioner's petition for reconsideration on the ground that the OHA has no discretion to apply equitable tolling is therefore an abuse of discretion and/or violated the CARES Act and is contrary to law.

225.    Petitioner is entitled to OHA review of the SBA's denial of PPP Loan forgiveness for Petitioner's Acuity loan.

### NINTH CAUSE OF ACTION

**Administrative Procedure Act, 5 U.S.C. § 706(1)**

**(To Compel Agency Action Unlawfully Withheld Upon the SBA's Decision to Deny Petitioner PPP Loan Forgiveness Due to Petitioner's "Ineligibility" to Receive a PPP Loan for Acuity and for Storymark Organized as Sole Proprietorships)**

226.    Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

227.    The APA provides that a reviewing court must "compel agency action unlawfully withheld."  [*See*, 5 U.S.C. § 702(1)].

228.    In denying PPP Loan forgiveness of the Acuity and Storymark loans based upon the SBA's belief that Petitioner was "ineligible" to receive a PPP Loan for each of his businesses, Acuity and Storymark, since each business was organized as a sole proprietorship, the SBA unlawfully ignored available guidance at the time the SBA issued each PPP Loan and withheld agency action required by law including, without limitation, 85 Fed. Reg. 33012 which provides, in relevant part,

that "if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate."

229.   In accordance with 5 U.S.C. § 706(2)(A), this Honorable Court must compel the SBA to grant forgiveness of Petitioner's PPP Loans for Acuity and for Storymark since Petitioner was eligible to receive a PPP Loan based upon available guidance at the time each PPP Loan was granted and in accordance with the mandate (the SBA's FAQ 17) in place at that time.

<b><u>TENTH CAUSE OF ACTION</u></b>

<b>Administrative Procedure Act, 5 U.S.C. § 706(1)</b>

<b>(To Compel Agency Action Unlawfully Withheld Upon<br>the SBA's Decision to Deny Petitioner PPP Loan Forgiveness<br>Alleging Acuity "Was Ineligible for the PPP Loan Amount")</b>

230.   Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

231.   The APA provides that a reviewing court must "compel agency action unlawfully withheld." [*See*, 5 U.S.C. § 702(1)].

232.   In denying PPP Loan forgiveness of the Acuity loan based upon the SBA's belief that Petitioner's Acuity "was ineligible for the PPP Loan Amount," the SBA unlawfully ignored available guidance at the time the SBA issued the PPP Loan for Acuity and withheld agency action required by law including, without limitation, 85 Fed. Reg. 33012 which provides, in relevant part, that "if SBA determines that the borrower is ineligible for the loan amount…SBA will direct the

65

lender to deny the loan forgiveness application in whole or in part, as appropriate."

233.  In accordance with 5 U.S.C. § 706(1), this Honorable Court must compel the SBA to grant forgiveness of Petitioner's PPP Loan for Acuity since Petitioner was eligible to receive the PPP Loan amount calculated and approved by the SBA's own agent, SmartBank, based upon available guidance at the time the PPP Loan was granted and in accordance with the mandate (the SBA's FAQ 17) in place at that time.

## ELEVENTH CAUSE OF ACTION

### Administrative Procedure Act, 5 U.S.C. § 706(1)

**(To Compel Agency Action Unlawfully Withheld Upon the SBA's Decision to Abandon Petitioner's PPP Loan Forgiveness for Storymark Due to the SBA's Belief That its Agent, SmartBank, "Cancelled" the PPP Loan)**

234.  Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

235.  The APA provides that a reviewing court must "compel agency action unlawfully withheld." [*See*, 5 U.S.C. § 702(1)].

236.  In denying PPP Loan forgiveness of the Storymark loan based upon the SBA's belief that the SBA's own agent, SmartBank, had "cancelled" Storymark's PPP Loan, the SBA relied upon false information given the SBA by its own agent, SmartBank, and failed to consider Petitioner's PPP Loan forgiveness application submitted on March 30, 2021 and resubmitted on March 31, 2021, April 5, 2021, and April 7, 2021 to the SBA through its agent (SmartBank) on each occasion.

/////

237. In accordance with 5 U.S.C. § 706(1), this Honorable Court must compel the SBA to grant forgiveness of Petitioner's PPP Loan for Storymark since Petitioner was eligible to receive the PPP Loan for Storymark, in the amount calculated and approved by the SBA's agent (SmartBank), and fully utilized the entirety of PPP Loan funds as the SBA directed and in accordance with the SBA's guidance qualifying the Petitioner's PPP Loan for Storymark for full forgiveness.

## TWELFTH CAUSE OF ACTION

### Administrative Procedure Act, 5 U.S.C. § 706(1)

### (To Compel Agency Action Unlawfully Withheld Upon the SBA's Decision to Deny Petitioner PPP Loan Forgiveness for Acuity Based Upon Equitable Tolling)

238. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

239. The APA provides that a reviewing court must "compel agency action unlawfully withheld." [*See*, 5 U.S.C. § 702(1)].

240. In denying PPP Loan forgiveness of the Acuity loan based upon the SBA's belief that Petitioner's appeal was filed untimely and the causes for such untimely filing were impermissible, the SBA unlawfully withheld agency action required by law including, without limitation, consideration of equitable tolling, and denied Petitioner relief otherwise afforded to him within the agency's tribunal.

241. In accordance with 5 U.S.C. § 706(1), this Honorable Court must compel the SBA to apply equitable tolling to Petitioner's appeal and remand the matter back to the OHA for further consideration and adjudication.

## THIRTEENTH CAUSE OF ACTION

### Declaratory Relief

242.    Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

243.    The SBA's conduct described above was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and/or is unsupported by substantial evidence.

244.    As a result of the foregoing, Petitioner is entitled to an Order from this Honorable Court including, without limitation, the following:

    a.    The SBA shall be directed to reverse its denial of Petitioner's PPP Loan forgiveness applications (Applications) for Acuity and Storymark and deem each of Petitioner's PPP Loan applications for Acuity and for Storymark eligible for a PPP Loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020;

    b.    The SBA shall be directed to reverse its denial of Petitioner's PPP Loan forgiveness application (Application) for Acuity or otherwise consider Petitioner's Application consistent with applicable law and the evidence before the SBA;

/////

68

c.      The SBA shall be directed to reverse its "cancelled" indication for Petitioner's PPP Loan for Storymark and review and issue a final loan review decision letter for Storymark's Application;

d.      The SBA shall determine Petitioner's eligibility for PPP Loan forgiveness for his Storymark loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020;

e.      The SBA shall be directed to apply equitable tolling or otherwise consider whether the facts supporting Petitioner's equitable tolling argument warrant equitable tolling and, should the SBA grant Petitioner relief sought in his petition for reconsideration, the SBA shall determine Petitioner's eligibility for PPP Loan forgiveness for his Acuity loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020; and

f.      The SBA shall provide Petitioner with any other additional awards consistent with applicable law and the evidence before the SBA.

/////

# PRAYER FOR RELIEF

**WHEREFORE,** Petitioner/Plaintiff Erik Cooper respectfully prays for judgment and relief as follows:

(A)     Entry of judgment in favor of the Petitioner/Plaintiff;

(B)     An Order holding unlawful the determination of Petitioner's/Plaintiff's PPP Loan eligibility as "ineligible";

(C)     An Order holding unlawful the determination of Petitioner's/Plaintiff's PPP Loan for Storymark as "cancelled";

(D)     An Order compelling the SBA to grant forgiveness of Petitioner's/Plaintiff's PPP Loan for Acuity in the amount of $111,900.00;

(E)     An Order compelling the SBA to grant forgiveness of Petitioner's/Plaintiff's PPP Loan for Storymark in the amount of $125,500.00;

(F)     An Order granting the Petitioner/Plaintiff the following relief:

1.     Directing the SBA to reverse its denial of Petitioner's/Plaintiff's PPP Loan forgiveness applications (Applications) for Acuity and Storymark and deem each of Petitioner's PPP Loan applications for Acuity and for Storymark eligible for a PPP Loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020;

/////

70

2. Directing the SBA to reverse its denial of Petitioner's/Plaintiff's PPP Loan forgiveness application (Application) for Acuity or otherwise consider Petitioner's Application consistent with applicable law and the evidence before the SBA;

3. Directing the SBA to reverse its "cancelled" indication for Petitioner's/Plaintiff's PPP Loan for Storymark and to review and issue a final loan review decision letter for Storymark's Application;

4. Directing the SBA to determine Petitioner's/Plaintiff's eligibility for PPP Loan forgiveness for his Storymark loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020;

5. Directing the SBA to apply equitable tolling or to otherwise consider whether the facts supporting Petitioner's/Plaintiff's equitable tolling argument warrant equitable tolling and, should the SBA grant Petitioner relief sought in his petition for reconsideration, the SBA shall determine Petitioner's/Plaintiff's eligibility for PPP Loan forgiveness for his Acuity loan based upon the laws, rules, and guidance available at the time of Petitioner's PPP Loan application transmitted to the SBA on April 10, 2020 as so published by the SBA on April 6, 2020;

and

 6. Granting the Petitioner/Plaintiff with any other additional awards consistent with applicable law and the evidence before the SBA.

(G) An award of all costs and attorneys' fees pursuant to any applicable authority; and

(H) Such further and other relief as the Court deems just and proper.

Respectfully submitted on this, the tenth day of July, 2025.

_____

Erik Cooper
Post Office Box 1413
Gatlinburg, Tennessee 37738
Telephone: (865) 438-0892
Email: CooperErik@aol.com

*Plaintiff in propria persona*